Filed 1/30/23  Youshei v. Youshaei CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| FARBOD YOUSHEI, | B313770 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. SC129602, 19SMCV00047) |
| v. | |
| JOSEPH YOUSHAEI et al., | |
| Defendants and Appellants; | |
| HELENA RADNIA, | |
| Cross-defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elaine W. Mandel, Judge. Affirmed in part, reversed in part, and remanded with directions.

Lang, Hanigan & Carvalho and Arthur Carvalho, Jr. for Defendants and Appellants.

Hill, Farrer & Burrill, William W. Steckbauer and Sean A. Topp for Plaintiff and Respondent and Cross-Defendant and Respondent.

_____

Appellant Joseph Youshaei and respondent Farbod Youshei are the sole members of two limited liability companies; one of the LLCs owns real property and the other LLC owns a car wash on the real property. Appellant Jilia Youshaei is Joseph's wife, and respondent Helena Radnia is Farbod's wife.[1] In 2019, Farbod brought suit against Joseph for conversion, breach of contract, and breach of fiduciary duty.

On February 26, 2020, appellants and respondents participated in a mediation and executed a settlement agreement, which was intended to resolve the underlying action and contains a number of provisions pertinent to this appeal that we discuss in further detail later in this opinion. Among other things, the settlement obligated appellants to pay respondents

---

[1] Because the surnames of three out of the four parties to this appeal are quite similar, we refer to each party individually by his or her respective first name. Furthermore, we refer to Joseph and Jilia collectively as "appellants," and to Farbod and Helena collectively as "respondents."

Additionally, although appellants claim in their opening brief that "Joseph filed a cross-complaint . . . against Farbod and Helena for breach of fiduciary duty, constructive fraud, negligence, and declaratory relief," they do not provide any citation to the record to support that assertion. Nevertheless, because the parties agree that Helena is a cross-defendant on one or more causes of action, our caption indicates that she has that designation.

2

$1.325 million within 60 days of the agreement, and provided that upon payment of the purchase price, respondents would transfer all of their interests in the two LLCs to appellants. As part of the transaction, the settlement agreement required respondents to cooperate with Joseph in his efforts to obtain financing for the purchase price, and it obligated the LLCs to pay all of the entities' debts, except for debts personally created by Joseph or Jilia, or which either of them concealed from respondents. The two sides agreed to release all claims against each other arising from the underlying action, and that a party prevailing on a motion to enforce the terms of the settlement agreement would be entitled to reasonable attorney fees and costs.

Appellants failed to pay the purchase price prior to the 60-day deadline (i.e., April 26, 2020) or at any point thereafter. Respondents moved to enforce the settlement agreement pursuant to Code of Civil Procedure[2] section 664.6 and for attorney fees and costs. The trial court granted respondents' motion and awarded attorney fees and costs. After respondents lodged their proposed judgment with the court, appellants filed objections thereto and respondents filed a response to appellants' objections. The trial court issued respondents' proposed judgment without commenting explicitly on appellants' objections.

On appeal, appellants argue we must reverse the judgment because it alters certain settlement terms and omits others. We agree with appellants that the trial court erred in requiring them

_____

[2] Undesignated statutory citations are to the Code of Civil Procedure.

3

to pay the attorney fee award as a prerequisite to obtaining respondents' interests in the LLCs; failing to clarify that a third party escrow company must oversee the LLCs' payment of their debts; changing the effective date of the releases from February 26, 2020 to the date of judgment; and omitting the clause requiring respondents to cooperate with Joseph in his efforts to obtain financing, along with another provision barring respondents from communicating with an individual who is not a party to this appeal, unless required to do so under compulsion of law.

On the other hand, we reject appellants' assertions the trial court erred in conditioning the transfer of respondents' interests in the LLCs on appellants' payment of respondents' costs and accrued interest, and in excluding certain debts from the obligations to be paid by the LLCs. Furthermore, appellants' claim that the trial court erred in omitting a confidentiality clause from the judgment is moot because they have taken no steps to seal filings relating to the motion to enforce the settlement, nor have they expressed any intention of doing so.

Accordingly, we reverse portions of the judgment, affirm the remainder thereof, and remand the matter to the trial court with directions to enter a new judgment that is consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

We summarize only those facts pertinent to our disposition of this appeal.

---

[3] Our factual and procedural background is derived in part from undisputed aspects of the trial court's rulings, admissions made by the parties in their filings, and assertions respondents

4

Joseph and Farbod are the sole members of Shoor Temple, LLC and Eagle Nasher, LLC (collectively, the LLCs). Jilia is Joseph's wife, and Helena is Farbod's wife. Shoor Temple, LLC owns real property in El Monte, which is improved by a car wash that is owned by Eagle Nasher, LLC.

In July 2018, Kenneth Kaplan initiated case No. SC129602 by filing a complaint against Joseph, wherein Kaplan sought to enforce a judgment against Joseph issued by a Massachusetts court and to hold Joseph liable as a fraudulent transferee.[4] In January 2019, Farbod and the LLCs initiated case No. 19SMCV00047 by filing a complaint against Joseph for conversion, breach of contract, and breach of fiduciary duty. In August 2019, the trial court consolidated the two cases.

On February 26, 2020, appellants and respondents (but not Kaplan) participated in mediation conducted by a retired judge. Later that day, the parties executed a settlement agreement as to

---

raise in their appellate brief to which appellants do not respond in their reply. (See *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling]; Standards of Review, *post* [noting that the trial court's orders and judgments are presumed correct]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 (*Artal*) [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "]; *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 (*Rudick*) [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

[4] Kenneth Kaplan is not a party to this appeal.

both cases that is comprised of two documents: (1) the stipulation for settlement and mutual release of claims, and (2) the addendum to stipulation for settlement and mutual release of claims.

Briefly summarized, the settlement agreement required appellants to purchase respondents' interests in the two LLCs for $1.325 million within 60 days of February 26, 2020, and bars Joseph and his agents from "physically access[ing] the car wash of the [LLCs]" until after this transaction has been consummated. The settlement agreement also provides that at the time of the transfer of respondents' interests in the LLCs, those two entities shall pay all of their debts, subject to certain exceptions. Respondents agreed to cooperate in Joseph's efforts to secure financing for the payment of the $1.325 million purchase price. Additionally, the parties agreed to release each other from any claims arising out of the two consolidated cases. The agreement also provides that it may be enforced pursuant to section 664.6.[5]

On January 6, 2021, respondents moved to enforce the settlement agreement pursuant to section 664.6 and for attorney fees. After the parties fully briefed the matter, the trial court heard the motion on January 29, 2021. At the hearing, the court issued a tentative ruling indicating the court intended to grant respondents' motion on the grounds, inter alia, that appellants had not paid the purchase price specified in the settlement agreement and their performance thereunder was not excused by the COVID-19 pandemic. The parties presented argument, and

---

[5] We discuss the provisions of the settlement agreement relevant to this appeal in greater detail in Discussion, parts B through I, *post*.

6

the court took the matter under submission. On March 4, 2021, the court adopted the tentative ruling as its final order.

On April 9, 2021, respondents lodged a proposed judgment with the trial court. On April 13, 2021, appellants filed objections to the proposed judgment. In particular, appellants complained that respondents' proposed judgment would: add "pre and post judgment interest at the rate of 10% per annum beginning April 26, 2020 and . . . $5,500 in attorney[ ] fees" to the purchase price, fail to establish an escrow for the transaction, "materially alter[ ] the debts that are to be paid at transfer," and change the date the releases are effective. (Underscoring & capitalization omitted.) On April 15, 2021, respondents filed a response to appellants' objections.

On April 30, 2021, the trial court issued respondents' proposed judgment. Although respondents claim "[t]he trial court overruled Appellant's Objections to the Proposed Judgment," the case register indicates the court entered judgment without first holding a hearing on appellants' objections to the judgment or issuing a written ruling thereon. Further, the record citation respondents supply in support of this assertion simply refers to the judgment itself, which does not discuss appellants' objections.

On June 23, 2021, appellants appealed the judgment. Appellants contend the sole issue on appeal is whether the trial court erred in entering a "judgment that does not restate all the terms of the settlement agreement and adds additional terms not included in the agreement."[6]

---

[6] On appeal, appellants do not dispute that they failed to pay the purchase price, nor do they claim to have been excused from doing so.

## STANDARDS OF REVIEW

Section 664.6, subdivision (a) provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (§ 664.6, subd. (a).)

"Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 (*Weddington Productions, Inc.*).) "[A] judge hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment [citation] . . . ." (*Weddington*, at p. 810.) " '[T]he trial court is under a duty to render a judgment that is in exact conformity with an agreement or stipulation of the parties. "If interpretation of a stipulation is in order the rules applied are those applied to the interpretation of contracts. [Citations.] It is not the province of the court to add to the provisions thereof [citations]; to insert a term not found therein [citations]; or to make a new stipulation for the parties." ' [Citations.]" (*Machado v. Myers* (2019) 39 Cal.App.5th 779, 792 (*Machado*).)

"Factual determinations made by a trial court on a section 664.6 motion to enforce a settlement must be affirmed if the trial court's factual findings are supported by substantial evidence. [Citations.] Other rulings are reviewed de novo for

errors of law." (*Weddington Productions, Inc.*, *supra*, 60 Cal.App.4th at p. 815.)

" '[I]nterpretation of a contract presents a question of law unless it depends on conflicting evidence, and an appellate court is not bound by a trial court's interpretation which does not depend on the credibility of extrinsic evidence.' [Citations.]" (*Boyd v. Oscar Fisher Co.* (1989) 210 Cal.App.3d 368, 378.)

Conversely, "[u]nder th[e substantial evidence] standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings. . . . [¶] . . . It is not our role as a reviewing court to reweigh the evidence or to assess witness credibility." (See *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).)

" 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' [Citation.]" (*Thompson*, *supra*, 6 Cal.App.5th at p. 981.) Thus, " ' "it is the appellant's responsibility to affirmatively demonstrate error" ' " by " 'supply[ing] the reviewing court with some cogent argument supported by legal analysis and citation to the record.' [Citation.]" (See *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492, 497 (*Los Angeles Unified School Dist.*); *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*).) The appellant bears this burden of rebutting the presumption of correctness accorded to the trial court's decision, regardless of the applicable

standard of review.[7]  (See *Los Angeles Unified School Dist.*, at p. 492 [noting that these principles apply to " ' "an appeal from any judgment" ' "]; see also *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 368, 399 [indicating that an appellant must affirmatively show the trial court erred even if the de novo standard of review applies].)

## DISCUSSION

As a threshold matter, we dispose of appellants' assertion that the presumption of correctness does not apply to the judgment.  The rest of this opinion addresses each aspect of the judgment that appellants claim diverges from the parties' settlement agreement.  We reverse the defective portions of the judgment, affirm the remainder thereof, and remand the matter to the trial court to issue a new judgment that corrects the defects we have identified.[8]

---

[7] Appellants argue that the presumption of correctness should not apply to the judgment.  We reject that argument for the reasons provided in Discussion, part A, *post*.

[8] At the conclusion of their opening brief, appellants argue we "should reverse the Judgement and direct the trial court to enter a new judgment that contains all of and only the terms of the settlement agreement."  At the end of their reply brief, however, appellants instead ask us to "reverse the trial courts [*sic*] granting of the Motion to Enforce the Settlement pursuant to Code of Civil Procedure §664.6 and the corresponding Judgment with directions to either deny the motion or to enter a new judgment that conforms precisely to the terms of the Settlement Agreement."  We decline to consider appellants' untimely request that we direct the trial court to deny the motion to enforce the settlement.  (*Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6 ["Arguments

**A.      The Presumption of Correctness Applies to the Trial Court's Judgment**

Appellants contend the presumption of correctness is inapplicable because the record does not show the trial court resolved any of the issues appellants raise on appeal.  Appellants further argue that we should treat the minute order granting the motion as a statement of decision to which the presumption of correctness does not apply because the order failed to resolve these principal disputed issues.

With regard to the first contention, appellants rely on *Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474 (*Kemp Bros. Construction, Inc.*), for the proposition that because " 'the record demonstrates the trial judge did not weigh the evidence' " relating to these issues, " 'the presumption of correctness is overcome.' " (Quoting *Kemp Bros. Construction, Inc.*, at p. 1477.)  Specifically, appellants maintain "the trial court's minute order granting the motion makes clear that it did not make any factual findings other than that the settlement [w]as made and there were no grounds for Appellants to avoid enforcement."

 According to appellants, "[t]he trial court did not discuss, analyze or decide the issues of who is responsible for the repayment of the Pacific Enterprise loan; whether Respondents were entitled to prejudgment interest; whether the prejudgment interest and attorney's fees are properly added to the purchase price (and thereby secured by the membership interests) rather than a separate award of damages; whether the effective date of

---

presented for the first time in an appellant's reply brief are considered waived."].)

the release was intended to be the date of the agreement or some uncertain date in the future which ultimately became the date of judgment; [and] whether the cooperation provision of the agreement was material or had lapsed . . . ."

In *Kemp Bros. Construction, Inc.*, the trial court granted a plaintiff's request for a pretrial order attaching a defendant's property. (See *Kemp Bros. Construction, Inc.*, *supra*, 146 Cal.App.4th at pp. 1476–1477.) "The [trial] court found [the plaintiff] was entitled to the remedy, not because [the plaintiff] had affirmatively shown the probable validity of its claim or established other requisite criteria" for such an order, but instead on the ground that collateral estoppel barred the defendant from relitigating whether it had breached a contract with the plaintiff. (See *ibid.*)

On appeal, the reviewing court found the trial court erred in invoking collateral estoppel against the defendant. (See *Kemp Bros. Construction, Inc.*, *supra*, 146 Cal.App.4th at p. 1477.) The Court of Appeal also declined to presume that substantial evidence nonetheless supported the trial court's attachment order. (See *id.* at pp. 1477–1478.) The *Kemp* court reasoned that "the minute order and the reporter's transcript demonstrate the [trial] court never engaged in the process of weighing the evidence because it improvidently agreed with [the plaintiff's] argument that [the defendant] was barred from 're-litigat[ing]' the issue of its alleged breach of contract and ruled accordingly." (See *id.* at p. 1478.) "For that reason, [the reviewing court] reverse[d] and remand[ed] with directions to the court to weigh the factors relevant to [the plaintiff's] burden of showing entitlement to the attachment order." (*Ibid.*)

Appellants' reliance on the *Kemp Bros. Construction, Inc.* decision is unavailing. Appellants admit to have raised their claims of error "either in Appellants' Opposition to the Motion or the Objections to the Proposed Judgment . . . ." Whereas the trial court in *Kemp* made statements suggesting it had not addressed whether the plaintiff had "affirmatively shown the probable validity of its claim or established other requisite criteria" for the issuance of an attachment order (see *Kemp Bros. Construction, Inc., supra,* 146 Cal.App.4th at pp. 1476–1477), there is no indication in the order granting respondents' motion or in the judgment that the trial court disposed of appellants' arguments based on some ground independent of the merits.[9] Under these circumstances, we presume the trial court did not abdicate its judicial duty to consider appellants' contentions before rejecting them.[10]

Next, appellants contend "[t]he minute order on a motion under Section 664.6 is properly analogized to a statement of decision after a bench trial to the extent the trial court makes findings of fact." Appellants insist that the trial court's failure to address their claims of error in the order granting respondents' motion and in the judgment "should, like the failure to resolve

---

[9] The minute order for the hearing on respondents' motion indicates the proceeding was not transcribed.

[10] (See Evid. Code, § 664 ["It is presumed that official duty has been regularly performed."]; cf. *People v. Sparks* (1968) 262 Cal.App.2d 597, 600–602 [relying on Evid. Code, § 664 for the proposition that, even though the record was silent on whether the trial court considered referring the defendants to the California Youth Authority, the court presumptively discharged its official duty to conduct that analysis].)

13

principal disputed issues in a statement of decision, preclude the applicability of the doctrine of implied findings to this case."

Before turning to the substance of this argument, we briefly describe the doctrine of implied findings. The doctrine is a specific application of the presumption of correctness to a judgment entered following a bench trial. (See *Thompson*, *supra*, 6 Cal.App.5th at p. 981.) Under the doctrine, "the reviewing court must infer . . . that the trial court impliedly made every factual finding necessary to support its decision.' [Citation.]" (*Ibid.*)

"For the doctrine of implied findings to be disabled on appeal, both steps of [a] two-step procedure . . . must be followed." (See *Thompson*, *supra*, 6 Cal.App.5th at p. 983.) "First, following the court's announcement of its tentative decision, . . . a party [must] specify, in timely fashion and in proper form, 'those controverted issues as to which the party is requesting a statement of decision. . . .' . . . . Second, . . . any omissions or ambiguities in the statement of decision must be 'brought to the attention of the trial court either prior to entry of judgment or in conjunction with' a new trial motion [citation] or a motion to vacate the judgment [citation], thus allowing the court to respond to objections before the taking of an appeal. *The second step is not a substitute for the first.*" (See *id.* at p. 982, italics added, fns. omitted.) "*[S]trict adherence to both steps* of the process is necessary before we will reverse the presumption of correctness generally accorded trial court judgments on appeal." (*Id.* at p. 983, italics added.)

Even if we treated the trial court's resolution of respondents' motion under section 664.6 as if it were a ruling following a bench trial, appellants' attempt to disable the

14

doctrine of implied findings would still fail. Appellants do not claim they asked the trial court for a statement of decision on the issues they raise on appeal, let alone direct us to any record evidence showing that they made such a request. Therefore, we adhere to the generally applicable rules that " 'all presumptions and intendments are in favor of supporting the judgment or order appealed from,' " and that " 'the appellant[s] ha[ve] the burden of showing reversible error . . . .' [Citations.]" (See *Estate of Sapp* (2019) 36 Cal.App.5th 86, 104; see also *Hernandez, supra,* 37 Cal.App.5th at p. 277 [" 'We are not obliged to make . . . arguments for [appellant] [citation], nor are we obliged to speculate about which issues counsel intend to raise.' "]; *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590 (*Alki Partners, LP*) ["[A]rguments not supported by adequate citations to [the] record need not be considered on appeal."].)

B. **Appellants Fail To Establish the Trial Court Erred in Requiring Them To Pay Accrued Interest Before Respondents Are Obligated To Transfer Their Interests in the LLCs to Appellants**

Paragraph 1 of the judgment provides: "[Respondents] shall have and recover from [appellants] and each of them, jointly and severally, the principal sum of $1,325,000.00 plus pre judgment interest at the rate of ten percent (10%) per annum accruing on this sum from and after April 26, 2020[11] and attorney's fees awarded by the Court in the amount of $5,500.00."

---

**11** (See Civ. Code, § 3289, subds. (a)–(b) ["Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation. [¶] . . . If a contract . . . does not

15

In turn, paragraph 2 of the judgment states: "Upon [respondents'] receipt of the principal sum of $1,325,000.00, all accrued interest thereon at the maximum legal rate, and the attorney's fees awarded by the Court in the amount of $5,500.00 from [appellants], which sum shall be paid through a third party escrow company, [respondents] shall transfer to [appellants] all of their membership interests, right, title, interest and claims in and to Shoor Temple and Eagle Nasher and the assets thereof, including, if any, the car wash business, the inventory and furniture fixtures and equipment, bank accounts, contracts, claims, intellectual property and development rights whether held in the name of Shoor Temple, LLC or Eagle Nasher, LLC, and [respondents] shall have no further ownership interest in such [LLCs], or obligations owed in connection with such [LLCs] and its operations, assets and/or debts incurred after the date of transfer."

Appellants contend that "paragraph 1 of the Judgment sets a purchase price . . . which is significantly greater than the agreed $1,325,000 by including pre and post judgment interest at the rate of 10% per annum beginning April 26, 2020 . . . ."[12] They further argue that respondents "did not seek pre-judgment or post-judgment interest" in their motion, and, "even if

stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."].)

[12] Although the judgment does not identify specifically the applicable postjudgment legal rate of interest, the parties impliedly agree it is 10 percent per annum. (See also § 685.010, subd. (a)(1) ["[I]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied."].)

16

[respondents] had, this amount cannot properly be added to the purchase price but must be a separate amount that respondents[ ] can seek to collect through post judgment process." For the reasons discussed below, we reject appellants' contention that the court erred in issuing a judgment requiring them to pay the accrued prejudgment and postjudgment interest before respondents are obligated to transfer their interests in the two LLCs to them.

First, we address appellants' assertion that respondents did not request prejudgment and postjudgment interest in their motion. In support of this proposition, appellants cite an excerpt from the notice of motion wherein the respondents did not ask explicitly for this relief. In the memorandum of points and authorities accompanying the notice of motion, however, respondents argued they "are entitled to interest on [the $1.325 million] at the legal rate of 10% per annum commencing on April 26, 2020 until the date it is paid and [respondents] must transfer their membership interest in Shoor Temple and Eagle Nasher upon receipt of the entirety of the [$1.325 million] and all accrued interest." In that memorandum, the respondents claimed they were entitled to this interest as " 'credit for . . . losses occasioned by the delay' " in appellants' performance of the settlement agreement. Because "[a]n omission in the notice [of motion] may be overlooked if the supporting papers make clear" the relief sought by the movants (see *Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.* (2020) 56 Cal.App.5th 894, 909), the respondents' failure to request interest in their notice of motion did not bar the trial court from awarding it to them.

17

We next address appellants' argument that the trial court lacked authority to order them to pay prejudgment and postjudgment interest before they could obtain respondents' rights in the LLCs.

A motion to enforce under section 664.6 is, "in effect, a request for specific performance of [a] settlement agreement." (See *Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1357, 1361.)

When a party is entitled to specific performance, "[e]stablished equitable principles require the parties be placed in the same positions they would have been in had the contract been timely performed." (See *Stratton v. Tejani* (1982) 139 Cal.App.3d 204, 208, 212 (*Stratton*).) Specifically, if "execution of that judgment will occur at a date substantially after the date of performance provided by the contract, financial adjustments must be made to relate their performance back to the contract date." (See *id.* at p. 212.) Under this approach, "when a buyer is deprived of possession of the property pending resolution of the dispute and the seller receives rents and profits, the buyer is entitled to a credit against the purchase price for the rents and profits from the time the property should have been conveyed to him," and the seller "is entitled to receive the value of his lost use of the purchase money during the period performance was delayed." (See *ibid.*) "These adjustments are ' "more like an accounting between the parties than like an assessment of damages." ' [Citation.]" (*Ibid.*)

By awarding respondents prejudgment and postjudgment interest at the rate of 10 percent per annum on the $1.325 million purchase price and ordering appellants to pay the principal and any accrued interest before respondents are obligated to transfer their membership interests in the LLCs to appellants, the trial

18

court provided respondents with a credit at the legal rate for their lost use of the purchase funds.  The *Stratton* decision establishes that the trial court had the equitable authority to grant this relief.  (See *Stratton*, *supra*, 139 Cal.App.3d at pp. 208, 212–213 [indicating that when a court orders specific performance of a sale contract, the seller is typically entitled to a "credit for his lost use of [the purchase] funds," and that the "legal rate" of interest can be, but is not necessarily, "the reasonable value of the use of money" for the purposes of an equitable adjustment].)

In their reply, appellants suggest for the first time that the trial court could not add interest at the legal rate of 10 percent per annum to the purchase price because the parties did not offer evidence on "the benefits received by the [respondents from operating the LLCs] during the interim period between the agreed sale date and the date of judgment" and on "the value of the [respondents'] loss of use of the purchase funds."  Yet, as we noted earlier in this section, respondents' memorandum of points and authorities in support of their motion apprised appellants of respondents' intention to seek interest at the legal rate as a credit for appellants' delay in performance.  Given the circumstances, appellants should have raised these evidentiary challenges in their opening brief to afford respondents an opportunity to refute it.  We thus decline to pass upon the merits of this argument.[13]  (See *Reichardt v. Hoffman* (1997)

---

[13]  Moreover, appellants concede that the COVID-19 pandemic disrupted the LLCs' operations after the parties executed the settlement agreement; indeed they represent that "[t]he COVID-19 pandemic destroyed the business." (Underscoring omitted.)  It would thus be wholly speculative for

52 Cal.App.4th 754, 764 [" 'Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief. To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission.' "].)

In sum, appellants fail to establish the trial court erred in ordering them to pay accrued interest at the legal rate of 10 percent per annum on the $1.325 million purchase price as a condition of receiving respondents' rights vis-à-vis the LLCs.

## C. The Trial Court Erred in Conditioning the Transfer of Respondents' Interests in the LLCs on Appellants' Payment of the $5,440 Attorney Fee Award

Appellants also claim the trial court erred in ordering them to pay the $5,500 award of attorney fees and costs as a condition of receiving respondents' interests in the LLCs. For the reasons discussed below, we agree with appellants that respondents' obligation to transfer their interests in the LLCs should not have been contingent on appellants' payment of the attorney fee portion of this award. In contrast, the trial court did not err in obligating appellants to pay the costs award before they could obtain respondents' interests in the LLCs.

As a preliminary matter, we observe that the judgment, which respondents prepared and was ultimately entered by the trial court, identifies the entire $5,500 figure as the attorney fee award. In the memorandum of points and authorities in support of their motion, however, respondents claimed that $60 of their

_____

us to presume that respondents received profits or other monetary benefits from operating the LLCs after April 26, 2020.

20

$5,500 request corresponded to the filing fee for the motion, whereas $5,440 of the award sought was attributable to the attorney fees they incurred in connection with the motion. Respondents supported this assertion with a declaration from their trial counsel to the effect that "[t]he filing fee for th[e] Motion and incurred by [respondents] is $60." Additionally, appellants acknowledge in their opening appellate brief that respondents sought "attorney's fees *and costs* in the sum of $5,500," and they do not contest respondents' assertion that $60 of that request is attributable to the filing fee for the motion. (Italics added.) Therefore, we deem $60 of the award as attributable to respondents' costs and the remaining $5,440 as their attorney fee award. (See *Artal, supra*, 111 Cal.App.4th at p. 275, fn. 2 [noting that we may construe a statement in a brief as an admission against the party making it].)

We turn to whether the trial court erred in ordering appellants to pay the $5,440 attorney fee award as a prerequisite to obtaining respondents' interest in the LLCs. As we explained in Discussion, part B, *ante*, a party moving to enforce a settlement agreement is essentially seeking a judgment of specific performance, and, in the course of granting that relief, a trial court may adjust a purchase price to account for a delay in performance of the instrument's obligations. Decisions recognizing this authority "appear to be animated by the principle that monetary relief incidental to specific performance is intended to, in essence, restore relations between the parties to what they would have been absent the breach . . . ." (See *Behniwal v. Mix* (2007) 147 Cal.App.4th 621, 629 (*Behniwal*); see also *id.* at pp. 624, 628–629 [identifying the *Stratton* decision as

21

an "authorit[y] dealing with monetary relief incidental to specific performance," capitalization omitted].)

A judgment adjusting the purchase price to account for a prevailing party's attorney fees, however, falls beyond the scope of this equitable authority because an attorney fee award "in a specific performance action is not a true 'incident' to the judgment for specific performance. The attorney fee award . . . is itself a matter of simple contract and the prevailing party's right to its fees is *under the contract* in conjunction with section 1717 of the Civil Code, which governs attorney fees awarded under contract." (See *Behniwal, supra*, 147 Cal.App.4th at pp. 630–631, fn. omitted.) Accordingly, the trial court should not have conditioned the transfer of respondents' interests in the LLCs on appellants' payment of the $5,440 attorney fees award.

In arriving at this conclusion, we do not imply that respondents are not entitled to recover these fees from appellants. Indeed, paragraph 4 of the stipulation and paragraphs 8.9 and 8.12 of the addendum to the stipulation authorize the prevailing party in a proceeding to enforce the agreement to recover reasonable attorney fees. Rather, we simply hold the trial court utilized an improper *"enforcement mechanism"* for respondents' collection of their attorney fees. (See *Behniwal, supra*, 147 Cal.App.4th at pp. 623–624 [utilizing the term *"enforcement mechanism"* to refer to an adjustment to a purchase price made by a judgment of specific performance].) Upon remand, the trial court shall enter a new judgment providing that appellants' entitlement to respondents' interest in the LLCs is not predicated on appellants' payment of the attorney fee award.

22

Unlike the $5,440 attorney fee award, the $60 filing fee is "a 'routine cost' " that is "an 'incident' of [a] specific performance judgment . . . ."  (See *Behniwal*, *supra*, 147 Cal.App.4th at pp. 631, 634; cf. *id.* at pp. 632, 634 [noting that the costs of duplicating a reply brief fall into the category of routine costs].)  Therefore, the court was authorized to adjust the purchase price to account for this cost.  (See *Stratton*, *supra*, 139 Cal.App.3d at p. 208 ["Established equitable principles require the parties [to] be placed in the same positions they would have been in had the contract been timely performed."]; *Behniwal*, at p. 629 [noting that cases concerning equitable adjustments to a purchase price "appear to be animated by the principle that monetary relief incidental to specific performance is intended to . . . restore relations between the parties to what they would have been absent the breach"].)

**D.    The Trial Court Erred in Failing To Clarify that the Escrow Company Is Charged with Facilitating the LLCs' Payment of Their Debts**

Paragraph 2.1 of the addendum to the stipulation provides: "An escrow with a licensed California escrow company, the identity of which shall be mutually agreed to between the Parties, shall be opened by the Parties regarding this Settlement and payment amounts and obligations, as soon as reasonably practicable."  One such obligation is described in paragraph 2.4 of the addendum, which provides in pertinent part that "all debts of Shoor Temple and Eagle Nasher . . . shall have been paid in full by the [LLCs]" "[a]t the time of the transfer."

Regarding the escrow company, paragraph 2 of the judgment provides in pertinent part:  "Upon [respondents'] receipt of the principal sum of $1,325,000.00, all accrued interest

23

thereon at the maximum legal rate, and the attorney's fees awarded by the Court in the amount of $5,500.00 from [appellants], *which sum shall be paid through a third party escrow company*, [respondents] shall transfer to [appellants] all of their membership interests, right, title, interest and claims in and to Shoor Temple and Eagle Nasher and the assets thereof . . . ." (Italics added.) No other provision of the judgment mentions the responsibilities of this third party escrow company.

Appellants contend the judgment deviates from the settlement agreement because it does not charge the escrow company with "handl[ing] the payment of the debts of the [LLCs] which are to be paid 'at the time of the transfer[.]' "[14] Respondents counter the judgment does not diverge from the settlement agreement because it is "obvious" that "[t]he escrow company will be required to follow all of the terms of the Judgment, which includes paragraph 3 that specifies exactly the debts that must be paid at the time of closing of the transaction."

Based on the parties' respective positions, we assume that the settlement agreement requires the escrow company to manage the payment of the LLCs' debts. (See *Artal*, *supra*,

---

[14] Although appellants suggest in their opening brief the judgment is deficient because it "does not establish an escrow for the transaction" (underscoring & capitalization omitted), respondents disagree, claiming that "at the time Judgment was entered, the evidence established that a mutually agreed escrow had been opened and . . . there is no evidence in the record that the parties['] selected escrow company had been discharged or that the parties had mutually terminated that escrow." By failing to respond to respondents' counterargument in the reply brief, appellants tacitly admit this appellate claim lacks merit. (See *Rudick*, *supra*, 41 Cal.App.5th at pp. 89–90.)

24

111 Cal.App.4th at p. 275, fn. 2.) Further, the text quoted in the first two paragraphs of this section shows that although the settlement agreement requires the escrow company to administer the payments and obligations identified in the instrument, the judgment does not contain language ordering the escrow company to ensure payment of the LLCs' obligations.[15] Upon remand, the new judgment entered by the trial court shall remedy this error. (See *Machado*, *supra*, 39 Cal.App.5th at p. 796 ["Having granted [a] request [to enter judgment pursuant to the terms of a settlement under section 664.6], the trial court could not later omit or modify some of those same terms from the parties' agreement."].)

Concerning the payoff of the LLC debts to be overseen by the escrow company, appellants also complain that although the settlement agreement "specifies that the debts are to be paid by the [LLCs], the Judgment does not." Specifically, whereas paragraph 2.4 of the addendum to the stipulation obligates the LLCs to pay their debts on the date of transfer, paragraph 3 of the judgment states that debts of the LLCs "*shall be paid* in full . . . ."[16] (Italics added.) We agree with appellants that this use of the passive voice in the judgment "creates an ambiguity and potential for future disputes." Because this aspect of the

---

[15] Appellants concede in their reply brief, however, that the language used in paragraph 2 of the judgment does, in effect, require the escrow company to "transfer the full purchase price . . . from [appellants] to [respondents] and transfer their membership interests to [appellants]."

[16] We address the judgment's language concerning the payment of the LLCs' debts that "existed on April 26, 2020" in Discussion, part E, *post*.

25

judgment is not " 'in exact conformity with [the] agreement . . . of the parties[,]' " the trial court erred in employing this language. (See *Machado*, *supra*, 39 Cal.App.5th at p. 794.) The new judgment entered by the trial court upon remand shall provide that the two LLCs are responsible for paying these debts.

Appellants ask that we also direct the court to "obtain the agreement of the parties as to how the debts of the [LLCs] are to be paid" if the LLCs "are unable to pay" them. Appellants concede that "the parties did not address this [issue] in the Settlement Agreement and the trial court did not address this in the Judgment." Yet, appellants cite no authority for the proposition that the trial court may compel the parties to agree on how to address a contingency not covered by their settlement. We thus do not discuss this matter further. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "].) We express no opinion on what legal recourse would be available to the parties in the event the transaction cannot be completed because the LLCs lack assets sufficient to pay off their debts.

### E. Appellants Fail To Establish the Trial Court Materially Altered the Debts to Be Paid Upon Transfer of Respondents' Interests in the LLCs

Paragraph 2.4 of the addendum to the stipulation provides: "At the time of the transfer, all debts of Shoor Temple and Eagle Nasher, including, but not limited to payroll taxes in the amount of ~$25,000 for the year 2019, and property taxes, in the amount of ~$30,000, for the year of 2018, shall have been paid in full by the [LLCs]. Excluded from the above sentence are all debts

personally created by Joseph or [Jilia[17]], or which either of them concealed from [respondents]."

In turn, paragraph 3 of the judgment states: "At the time of [respondents'] transfer of their membership interests in Shoor Temple, LLC and Eagle Nasher, LLC to [appellants], all debts of Shoor Temple, LLC and Eagle Nasher, LLC that existed on April 26, 2020 and in the amounts that they existed on April 26, 2020, shall be paid in full,[18] except for the debts created solely by Joseph Youshaei including the loan from Pacific Enterprise Bank which loan shall remain the responsibility of Shoor Temple, LLC and Eagle Nasher, LLC following the transfer of the membership interest by [respondents.]"[19]

Appellants maintain that paragraph 3 of the judgment "materially alters the debts that are to be paid at transfer." (Underscoring & capitalization omitted.) First, appellants complain that "[t]he judgment provides that only the debts existing on . . . April [26], 2020 are to be paid,"[20] whereas they

---

[17] Although this provision refers to "debts personally created by Joseph or *Gila*" (italics added), the parties indicate in their briefing that the settlement agreement uses the name "Gila" to refer to appellant *Jilia* Youshaei.

[18] As we explained in Discussion, part D, *ante*, upon remand, the trial court must enter a new judgment clarifying that *the LLCs* shall pay these debts in full.

[19] In their appellate briefing, neither side supplies us with the specifications of the Pacific Enterprise Bank loan (e.g., its initial principal balance and the date of origination). This omission has no impact on our disposition of the instant appeal.

[20] Although appellants refer to "April 30, 2020" in connection with this argument, this appears to be a typographical error because they concede that paragraph 3 of the judgment

27

claim that paragraph 2.4 of the addendum to the stipulation "specifies that the debts existing at the time of the transfer are to be paid." Second, appellants argue that the trial court should not have excluded the Pacific Enterprise Bank loan from the debts to be paid upon transfer. We reject each of these contentions.

In raising the first contention, appellants mischaracterize April 26, 2020 as merely "the original anticipated transfer date . . . ." Paragraph 2.2 of the addendum provides that appellants "*shall* pay the total sum of $1,325,000.00 to [respondents], *within 60 days of the full execution of this Settlement Agreement*" (italics added), paragraph 2.3 in turn provides that respondents shall transfer their membership interests "[u]pon the full payment" of that amount, paragraph 2.4 requires the LLCs to pay their debts "[a]t the time of the transfer," and there is no dispute the settlement agreement was executed on February 26, 2020. Consequently, it is apparent the parties agreed that the transaction at issue, including the payment of the LLCs' debts, would occur no later than 60 days after February 26, 2020, to wit, April 26, 2020.[21]

Yet, under appellants' interpretation of paragraph 2.4 of the addendum, the LLCs must pay the debts outstanding as of the date of the transfer (which has yet to occur)—regardless of whether the date of transfer actually occurs at a point in time much later than April 26, 2020. Elsewhere in their briefing,

_____

required the LLCs to pay debts "that existed on April 26, 2020 and in the amounts that they existed on April 26, 2020 . . . ." (Boldface & italics omitted.)

[21] We take judicial notice of the fact that April 26, 2020 was 60 days after February 26, 2020. (Evid. Code, §§ 452, subd. (h), 459.)

28

appellants make admissions demonstrating that this interpretation may prejudice respondents. Appellants contend the LLCs "were losing money at the time of the hearing [on respondents' motion to enforce the settlement] and would likely not have the ability to pay the debts at the time of the transfer . . . ." Appellants further claim that because of the financially precarious situation of the LLCs, "[t]he only logical method of ensuring that the [LLCs] pay the [LLCs'] debts by the time of the transfer . . . is to (a) require that the members each contribute their pro-rata share of the funds necessary to pay the debts or (b) require that a portion of the purchase price equal to the [LLCs'] debts multiplied by Farbod's percentage membership interest be held by escrow to pay his portion of the [LLCs'] debts."

Thus, appellants' interpretation of the settlement agreement would require respondents to shoulder a portion of the financial burden resulting from the LLCs' supposed *present* inability to pay their debts, whereas the trial court's construction would (per appellants' admission) result in respondents bearing their proportionate share of the shortfall (if any) that may have existed had appellants timely performed on or before the April 26, 2020 deadline. We believe the trial court's reading is correct because it accounts for the parties' apparent attempt to limit their respective liabilities in accordance with the April 26, 2020 deadline, whereas appellants' interpretation ignores this deadline and relies on an isolated phrase from paragraph 2.4 of the addendum (i.e., that the LLCs shall pay the debts "[a]t the time of the transfer"). (See Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."].)

Appellants argue that "[t]he judgment dramatically changes the economics of the settlement deal and incentivizes [respondents] to mismanage the [LLCs], incur additional debt, [and] take for themselves monies that should be used to pay the ongoing liabilities and debts of the [LLCs]." Because we order the trial court to limit the scope of the judgment's release of claims to only those arising on or before February 26, 2020 (see Discussion, part F, *post*; Disposition, *post*), appellants would not be barred from seeking relief for any malfeasance hypothetically perpetrated by respondents after that date. We thus reject appellants' contention that the trial court's interpretation incentivizes respondents to mismanage the LLCs.

Regarding the provision of the judgment excepting the Pacific Enterprise Bank loan from the debts to be paid upon transfer of respondents' interests in the LLCs, appellants claim that substantial evidence does not support this exception. In particular, appellants direct us to a declaration Joseph submitted to the trial court, wherein he stated that when he signed the settlement agreement, he "did not intend or understand that the entirety of the Pacific Enterprise Bank loan would be [his] responsibility."

" 'California recognizes the objective theory of contracts [citation], under which "[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation" [citation].' " (*Iqbal v. Ziadeh* (2017) 10 Cal.App.5th 1, 8 (*Iqbal*).) Accordingly, Joseph's subjective intent has no bearing on whether the trial court properly construed paragraph 2.4 of the addendum.

Furthermore, in connection with respondents' motion, Farbod submitted a supplemental declaration wherein he stated:

"I was not made aware of the [Pacific Enterprise Bank] loan until after it was obtained by Joseph Youshaei and did not participate in or sign any document relating to obtaining this loan." This evidence that Joseph obtained the Pacific Enterprise Bank loan without Farbod's foreknowledge and involvement indicates that Joseph "personally created" the debt for the purposes of paragraph 2.4's exclusion clause. Appellants do not explain why Farbod's testimony on this point does not constitute substantial evidence supporting the trial court's interpretation of paragraph 2.4. Accordingly, we hold that substantial evidence supports the trial court's construction of section 2.4 of the addendum as excluding this loan from the transaction. (See *Iqbal, supra,* 10 Cal.App.5th at p. 8 [" 'Extrinsic evidence is admissible to prove a meaning to which the contract is reasonably susceptible.' "]; *Thompson, supra,* 6 Cal.App.5th at p. 981 ["A single witness's testimony may constitute substantial evidence to support a finding."].)

Lastly, appellants claim (1) the parties could not have intended to exclude the Pacific Enterprise Bank loan from the debts paid upon transfer because it is "the single largest debt of the [LLCs,]" and (2) Farbod somehow deceived appellants into believing that the Pacific Enterprise Bank loan was not a debt "personally created by" Joseph or Jilia or which "either of them concealed from [respondents]" for the purposes of paragraph 2.4 of the addendum. The first of these contentions fails because appellants do not substantiate it with any citation to the record. (See *Alki Partners, LP, supra,* 4 Cal.App.5th at p. 590, fn. 8 ["[C]ourts will decline to consider any factual assertion unsupported by record citation at the point where it is asserted."].) We reject the second claim because it is not

31

supported by any cogent argument or legal analysis. (See *Hernandez, supra,* 37 Cal.App.5th at p. 277 [holding that a reviewing court may disregard such unsupported claims of error].)

In sum, appellants have not shown the trial court erred in requiring the LLCs, in the course of effecting the transaction contemplated by the settlement agreement, to pay off only the debts that existed on April 26, 2020, nor have they shown the court erred in excluding the Pacific Enterprise Bank loan from the debts of the LLCs to be paid.[22]

### F.     The Trial Court Erred in Changing the Effective Date of the Releases

Appellants complain that the trial court changed the effective date of the settlement agreement's releases from February 26, 2020 to the date of entry of the judgment. Respondents claim that "the Settlement Agreement did not specifically address when the releases were to be effective." We disagree with respondents.

The releases in paragraph 3 of the addendum to the stipulation use the present tense verbs "release" and "discharge" and then proceed to describe the claims that are extinguished by the settlement.[23]   Thus, the language of the settlement

---

[22]  Because we conclude the trial court did not err in construing the settlement agreement to except the Pacific Enterprise Bank loan from the transaction, we need not address appellants' assertion that the parties did not amend the agreement to exclude this obligation from the debts to be paid upon transfer.

[23]  Paragraph 3 of the addendum, which is actually comprised of two paragraphs, provides in pertinent part:

agreement establishes that the releases have the same effective date as the settlement itself, to wit, February 26, 2020. (See *People v. Loeun* (1997) 17 Cal.4th 1, 11 [" '[The legislative] use of a verb tense is significant in construing statutes.' "]; see also *Christian v. Flora* (2008) 164 Cal.App.4th 539, 551 (*Christian*) ["Contracts . . . are writings to be construed in accordance with substantially the same canons of interpretation as statutes."].) By providing that the parties' claims "are hereby released" in paragraph 4 of the judgment, the trial court changed the effective date to the entry of the judgment, to wit, April 30, 2021.

Respondents also suggest that February 26, 2020 could not possibly be the effective date of the releases because "no consideration [was] to be paid" on that date. Given the aforesaid language in paragraph 3 of the addendum to the stipulation establishing the releases therein became effective mutually on February 26, 2020, we fail to discern the relevance of appellants' April 26, 2020 deadline to pay the purchase price. (See Discussion, part E, *ante* [explaining Apr. 26, 2020 was appellants' payment deadline]; see also *Pack v. Kings County Human*

---

"[Appellants] fully release and forever discharge [respondents], from all claims . . . which [appellants] have or could have pleaded or alleged, against [respondents] relating to or arising out of [the two consolidated actions], including the entirety of the claims and underlying allegations in the [two consolidated actions]. [¶] [Respondents] fully release and forever discharge [appellants], from all claims . . . which [respondents] have or claim to have, or could have pleaded or alleged, against [appellants] relating to or otherwise arising out of the [two consolidated actions], including the entirety of the claims and underlying allegations in the [two consolidated actions], except for the obligations otherwise stated in this Agreement."

*Services Agency* (2001) 89 Cal.App.4th 821, 826, fn. 5 (*Pack*) [" 'Although it is the appellant's task to show error, there is a corresponding obligation on the part of the respondent to aid the appellate court in sustaining the judgment. "[I]t is as much the duty of the respondent to assist the [appellate] court upon the appeal as it is to properly present a case in the first instance, in the court below." ' "].)

In addition, respondents argue that "there are many provisions of the Settlement Agreement that while binding upon execution, were not to take effect until specified future dates, [e.g.,] the payment of the $1,325,000 by April 26, 2020 in exchange for the transfer of the membership interests." The fact that the settlement agreement does not specify a post-February 26, 2020 effective date for the releases but does identify certain later deadlines for its other obligations in fact undercuts respondents' position. Had the parties intended to have the releases become effective at some later date, they presumably would have stated as such in the settlement agreement, just as they had for other obligations in the agreement. (See *Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 ["*Expressio unius est exclusio alterius*. The expression of some things in a statute necessarily means the exclusion of other things not expressed."]; see also *Christian, supra,* 164 Cal.App.4th at p. 551 [holding that contracts are to be "construed in accordance with substantially the same canons of interpretation as statutes"].)

Thus, we agree with appellants that the trial court changed the effective date of the releases. It lacked the authority to do so. (See *Machado, supra,* 39 Cal.App.5th at p. 792 [" '[W]hat the court could not do in considering approval of a settlement under

Code of Civil Procedure section 664.6 was to add to or modify an express term of the settlement.' "].)

## G. The Trial Court Erred in Omitting the Cooperation Clause From the Judgment

Paragraph 2.9 of the addendum to the stipulation provides: "[Respondents] shall cooperate with Joseph Youshaei in his efforts to obtain financing for the payment of the monies due hereunder, including providing information reasonably required by a lender as soon as practicable after a written request therefor."

Appellants correctly point out that the judgment does not contain this cooperation clause from the settlement agreement. Respondents claim that this omission does not warrant reversal of the judgment because appellants have not shown that paragraph 2.9 of the addendum is a material term, "[t]here is nothing in the record to support a finding as urged by Appellants that the obligation to reasonably cooperate continues beyond the agreed closing date or whenever Appellants chose to try to get a loan after [Joseph's] breach," and this term was already "fully performed by Respondents." We find none of respondents' arguments persuasive.

As a preliminary matter, we note that respondents cite no authority for the proposition that in entering judgment pursuant to a settlement under section 664.6, the trial court can simply omit an entire provision that it deems to be immaterial to the parties' agreement.[24]

---

[24] (See *Pack*, *supra*, 89 Cal.App.4th at p. 826, fn. 5 [noting that the respondent is obligated to assist the reviewing court in sustaining the judgment].)

In any event, we elect to address whether the cooperation clause is a material term. Respondents assert the fact that appellants' obligation to pay the purchase price is not contingent on whether they obtain financing "proves" that the cooperation clause is not material.

Under our state's contract law, "a term may be 'material' in one of two ways: It may be a necessary term, without which there can be no contract; or, it may be an important term that affects the value of the bargain." (See *Facebook, Inc. v. Northwest Software, Inc.* (9th Cir. 2011) 640 F.3d 1034, 1037–1038.) The cooperation clause readily satisfies the second part of this definition of materiality. Paragraph 2.9 of the addendum obligates respondents to "cooperate with Joseph Youshaei in his efforts to obtain financing *for the payment of the monies due hereunder . . . .*" (Italics added.) This text demonstrates the purpose of paragraph 2.9 is to facilitate the transaction identified as the "consideration between the parties" in the agreement, to wit, the transfer of respondents' interests in the LLCs to appellants in exchange for the purchase price.[25] (Boldface & capitalization omitted.) The cooperation clause clearly impacts whether the parties can ultimately consummate the transaction.

The text of paragraph 2.9 does not state precisely when respondents are excused from their obligation to cooperate with Joseph in his efforts to obtain financing. Respondents seem to argue that paragraph 2.9's silence on this point demonstrates the clause "was only applicable to Appellants' efforts to obtain financing for the required purchase by the agreed closing date of

---

[25] (See Civ. Code, § 1638 ["The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."].)

April 26, 2020." As we explained in the paragraph above, however, the text of this provision demonstrates it is an important means of effectuating the transfer that is at the heart of the agreement. Given that fact, the absence of an expiration date for the cooperation clause suggests the parties intended for the provision to remain in effect until the transaction is ultimately consummated. Moreover, given that the type of "cooperat[ion]" contemplated by paragraph 2.9 "includ[es] providing information reasonably required by a lender as soon as practicable after a written request therefor," it is not apparent to us that the obligations imposed by this provision are so onerous that leaving it intact beyond April 26, 2020 would necessarily contravene the contracting parties' intent. Under these circumstances, we believe the trial court erred in tacitly concluding that paragraph 2.9 had expired.

Lastly, respondents assert that because "[t]here was substantial evidence in the record to support a finding that [they] did in fact reasonably cooperate with Appellants in their attempts to obtain financing," paragraph 2.9 of the addendum "has . . . been fully performed by Respondents." Although whether respondents have already fully performed their duties under the cooperation clause "may be relevant to the *enforcement* of the judgment, once entered," that matter is "not relevant to the entry of judgment pursuant to section 664.6." (See *Machado*, *supra*, 39 Cal.App.5th at pp. 795–796.) Rather, " '[t]he power of the trial court under Code of Civil Procedure section 664.6 . . . is extremely limited' " to "enter[ing] judgment 'pursuant to the terms of the settlement[.]' " (See *Machado*, at pp. 792, 796.)

For these reasons, we conclude that the trial court erred in failing to include the cooperation clause in its judgment.

37

**H.    The Trial Court Erred in Omitting From the Judgment the Provision Barring Respondents From Communicating with Kenneth Kaplan**

Paragraph 2.7 of the addendum to the stipulation provides: "[Appellants] shall hold harmless and indemnify [respondents], and defend [respondents], from all claims, damages, settlements, and/or judgments entered or which may be entered against [respondents], and/or against Shoor Temple and Eagle Nasher, in Case No[.] SC129602, in favor of [Kenneth] Kaplan or his company, or in favor of any assignee or successor-in-interest of Kaplan or any plaintiff or cross-complainant therein. [Respondents] will cease communicating with Kaplan and his counsel except under legal compulsion."

Appellants accurately observe that the last sentence of paragraph 2.7 of the addendum is absent from the judgment. Instead, paragraph 5 of the judgment includes only the indemnification and duty to defend protections provided in paragraph 2.7.

Respondents claim the judgment did not need to include this ban on communicating with Kaplan and his counsel because appellants have failed to demonstrate this is a material term of the settlement agreement. We reject this argument because respondents fail to support it with pertinent legal authority. (See *Pack*, *supra*, 89 Cal.App.4th at p. 826, fn. 5.)

Although we do not suggest that section 664.6 compelled the trial court to recite verbatim every word of the settlement agreement, we do hold the court was dutybound to render a judgment that "accurately reflect[s] the terms of the parties' settlement agreement." (See *Machado*, *supra*, 39 Cal.App.5th at

pp. 792, 801.) Upon remand, the court shall include the noncommunication clause in its new judgment.

## I. Appellants' Request for the Inclusion of the Confidentiality Provision in the Judgment Is Moot

Paragraph 4 of the addendum to the stipulation states: "The parties agree to keep the existence and terms of this Agreement confidential, and not disclose the existence or terms of this Agreement, to anyone other than their attorneys, affiliates, and employees of their attorneys and affiliates, tax advisors, accountants, and/or financial consultants, healthcare provider(s), spouse(s) or parent(s), or as specifically and expressly required by statute, subpoena, law, or court order. The Parties may disclose the settlement amount to the United States Internal Revenue Service or any other taxing authority as required by law. This Paragraph shall not preclude the Parties from responding truthfully to inquiries made in connection with any legal or governmental proceeding pursuant to subpoena, nor preclude the disclosure of the terms or existence of this Agreement as may be required by law or otherwise ordered by the Court in any potential related claim, action, or proceeding."[26]

In their opening brief, appellants contest the trial court's failure to include this confidentiality provision in the judgment.

---

[26] We note that the following text from the stipulation permitted respondents to disclose the terms of the settlement to the trial court: "[This settlement] is admissible and subject to disclosure, despite the otherwise enforceable requirements of confidentiality, solely for the purpose of establishing in court that an agreement has been reached by the parties for purpose of enforcing and interpreting that agreement."

They claim that "[t]his provision . . . must be included in the Judgment for it to comply with section 664.6."

In their appellate brief, respondents argue the relief appellants seek is "moot" because appellants did not "file a motion to seal the underlying Motion to Enforce the Settlement Agreement and all related pleadings," but "instead openly cite and argue the term[s] of the Settlement Agreement in a public forum." By offering no response to this argument in their reply brief, appellants impliedly admit that they never sought permission to seal any filings relating to the settlement agreement. (See *Rudick*, *supra*, 41 Cal.App.5th at pp. 89–90.) Those documents are publicly accessible. (See Cal. Rules of Court, rule 2.550(c) ["Unless confidentiality is required by law, [trial] court records are presumed to be open."].)

Turning to the mootness issue, " ' " 'when . . . an event occurs which renders it impossible for [the] court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment . . . .' [Citations.]" [Citation.] The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief. [Citations.] If events have made such relief impracticable, the controversy has become . . . moot. [Citations.]' " (See *Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 722.)

As we explained earlier in this section, the terms of the settlement agreement are already a matter of public record. Furthermore, assuming arguendo appellants could mitigate some of the prejudice resulting from this public disclosure by requesting the trial court to seal filings relating to the settlement upon remand, appellants have not represented any intent to seek

any such relief, let alone demonstrated a legal entitlement to do so.  Appellants have not sought leave to file their appellate briefs under seal either.  In sum, we conclude appellants' claim of error concerning the judgment's failure to include the settlement agreement's confidentiality provision is moot, and we do not further address it.

## DISPOSITION

We reverse the judgment to the extent that it:
(a) conditions the transfer of respondent Farbod Youshei's and respondent Helena Radnia's rights to Shoor Temple, LLC and Eagle Nasher, LLC, and the assets thereof, on appellant Joseph Youshaei's and appellant Jilia Youshaei's payment of the $5,440 attorney fee award; (b) does not provide that the third party escrow company shall facilitate Shoor Temple, LLC's and Eagle Nasher, LLC's payment of their debts; (c) provides that the parties' releases are effective as of April 30, 2021 instead of February 26, 2020; (d) omits the settlement agreement's cooperation clause; and (e) omits the provision from the settlement agreement requiring respondents to cease communicating with Kenneth Kaplan and his counsel except insofar as respondents are under legal compulsion to do so.

We affirm the remainder of the judgment. Upon remand, the trial court shall enter a new judgment that is consistent with this opinion. The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, Acting P. J.

We concur:


CHANEY, J.


WEINGART, J.

42